UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUIKTRAK, INC.,

        Plaintiff,

v.

        File No.  1:05-CV-384

DELBERT HOFFMAN, DAVID HOFFMAN,
BRUCE BROWER, LUANN BROWER,
DANIEL CLEVELAND, and DC
COMPUTER SERVICES, INC.,

        HON. ROBERT HOLMES BELL

        Defendants.
_____/
DELBERT HOFFMAN,

        Counter-Plaintiff,

v.

QUIKTRAK, INC.,

        Counter-Defendant,
_____/
DELBERT HOFFMAN,

        Third-Party Plaintiff,

v.

DEERE CREDIT, INC., d/b/a JOHN
DEERE CREDIT,

        Third-Party Defendant,
_____/

DAVID HOFFMAN,

        Counter-Plaintiff,

v.

QUIKTRAK, INC.,

        Counter-Defendant.

_____/

## O P I N I O N

This matter comes before the Court on Plaintiff Quiktrak, Inc.'s and Third-Party Defendant Deere Credit, Inc.'s joint motion to dismiss and for summary judgment on the counterclaims filed by Delbert Hoffman and David Hoffman and the third-party claim filed by Delbert Hoffman. For the reasons that follow, the motion will be granted.

### I.

This action for breach of contract and fraud arises out of a relationship between Tailored Lawn & Turf Equipment, Inc. ("Tailored Lawn") and John Deere Company ("John Deere"). Tailored Lawn was an authorized dealer of John Deere lawn and garden equipment and commercial products. Tailored Lawn obtained floor plan financing for its inventory of John Deere products through Third-Party Defendant Deere Credit, Inc. ("Deere Credit"). Defendants Bruce Brower, Luann Brower, and David Hoffman personally guaranteed Tailored Lawn's obligations to John Deere.

Plaintiff Quiktrak, Inc. is in the business of providing inspection and verification services to banks and finance companies. During the relevant time period Quiktrak had an

2

agreement with John Deere to provide floor plan inspection services for lawn care and recreational vehicle dealers throughout the nation that had secured financing for their inventory through programs administered by John Deere.

In August 1994 Quiktrak contracted with Defendant Daniel Cleveland to provide inventory services pursuant to an Independent Contractor Agreement. (Froomer Aff. ¶ 2). In June 2003 Quiktrak entered into a similar Independent Contractor Agreement with Defendant DC Computer Services, Inc., a corporation owned by Cleveland. Cleveland performed inventory audits at Tailored Lawn on Quiktrak's behalf from 1995 until the termination of his employment in 2003.

Tailored Lawn was owned by Bruce Brower and David Hoffman from 1996 until December 2002 when David Hoffman's father, Delbert Hoffman, purchased shares in the partnership. Bruce Brower was the president of Tailored Lawn. Bruce Brower has admitted that he sold approximately $240,000 of John Deere inventory out-of-trust, meaning he sold the equipment without paying the lender as required by the financing agreement. (Brower Dep. at 6).

John Deere terminated its dealer agreements with Tailored Lawn on or about October 17, 2003, after learning that Tailored Lawn had sold substantial John Deere inventory out-of-trust. John Deere and Deere Credit sought recovery from Quiktrak for losses attributable to improper inventory audits. Deere Credit and Quiktrak entered into a

3

settlement and Deere Credit assigned to Quiktrak any claims it might have against Tailored Lawn, its guarantors, or any third parties.

Quiktrak then filed this action alleging three counts of breach of guaranty against Bruce Brower, Luann Brower, and David Hoffman, one count of conversion against Delbert Hoffman, one count of fraud against David Hoffman, one count of fraud against Bruce Brower, one count of breach of contract against Daniel Cleveland, one count of fraud against Daniel Cleveland, one count of breach of contract against DC Computer Services, Inc., and one count of tortious interference with contract against David Hoffman, Daniel Cleveland and DC Computer Services, Inc.  (2nd Am. Compl. Docket # 35).

Delbert Hoffman and David Hoffman filed counterclaims against Quiktrak alleging that Quiktrak was vicariously liable for its agent Cleveland's failure to properly perform the inventory inspection services at Tailored Lawn.  (Docket # 12; Docket # 39).  Delbert Hoffman also filed a third-party complaint against Deere Credit alleging that Deere Credit was vicariously liable for Quiktrak's failure to properly perform the inventory inspection services at Tailored Lawn.  (Docket # 14).

By order dated October 6, 2005, this Court granted Plaintiff's motion for voluntary dismissal of the conversion claim against Defendant Delbert Hoffman.  (Docket # 51).  On November 8, 2005, this Court entered an order staying this matter as to Defendants Bruce Brower and Luann Brower in light of their pending bankruptcy petition.  (Docket # 56).

4

II.

Quiktrak and Deere Credit have moved for summary judgment and/or dismissal of Delbert Hoffman and David Hoffman's counterclaims against Quiktrak and Delbert Hoffman's third-party complaint against Deere Credit.

**A. Vicarious Liability**

Both Hoffmans have alleged in their counterclaims that they relied on Quiktrak to properly perform the inventory inspection services, that Quiktrak's agent, Cleveland, failed to properly perform the inventory inspection services in a reasonable manner, and that as a result of Cleveland's negligent and fraudulent acts the Hoffmans suffered damages and economic loss. (Docket #'s 12 & 39).

Neither Delbert Hoffman nor David Hoffman had a contractual relationship with Quiktrak. Accordingly, both counterclaims rely on the theory that Quiktrak is vicariously liable for the negligent or fraudulent actions of Cleveland.

David Hoffman did not respond to the motion for summary judgment. Neither did he respond to Quiktrak's request for admissions. Quiktrak asked David Hoffman to admit that "Quiktrak is not vicariously liable for the tortious negligent and/or wrongful acts of its agent, as set forth in paragraph 25 of David Hoffman's counterclaim."

The Federal Rules of Civil Procedure provide that each matter of which an admission is requested "is admitted unless, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer

or objection addressed to the matter . . . ." FED. R. CIV. P. 37. Because David Hoffman has not responded to Quiktrak's request for admission, he is deemed to have admitted that Quiktrak is not vicariously liable for any wrongful acts of Cleveland. Accordingly, Quiktrak is entitled to summary judgment on David Hoffman's counterclaim.

Delbert Hoffman did respond to the motion for summary judgment. Delbert Hoffman contends that the motion for summary judgment should be denied because there are questions of fact as to whether or not Cleveland was an independent contractor.

"An independent contractor is one who, carrying on an independent business, contracts to do work without being subject to the right of control by the employer as to the method of work but only as to the result to be accomplished." *Kamalnath v. Mercy Memorial Hosp. Corp.*, 194 Mich. App. 543, 553-54, 487 N.W.2d 499, 505 (1992) (quoting *Parham v. Preferred Risk Mut. Ins. Co.*, 124 Mich. App. 618, 622-23, 335 N.W.2d 106 (1983)).

In determining whether a defendant should be held vicariously liable for injuries under the doctrine of *respondeat superior*, the court applies the control test. *Kral v. Patrico's Transit Mixing Co.,* 181 Mich. App. 226, 232, 448 N.W.2d 790, 793 (1989). *See also Norris v. State Farm Fire & Cas. Co.*, 229 Mich. App. 231, 239, 581 N.W.2d 746 (1998) ("it is now well established that except for worker's compensation benefits, the correct standard to assess respondeat superior liability is the control test, not the economic reality test."); *Hoffman v. JDM Associates, Inc.*, 213 Mich. App. 466, 468, 540 N.W.2d 689, 690 (1995) (same). "[T]he purpose of the control test is to define and delimit the circumstances under which a master

should be held liable for the acts committed by a servant which injure a third party." *Nichol v. Billot*, 406 Mich. 284, 296, 279 N.W.2d 761, 764 (1979).

> Generally the circumstances which go to show one to be an independent contractor, while separately they may not be conclusive, are the independent nature of his business, the existence of a contract for the performance of a specified piece of work, the agreement to pay a fixed price for the work, the employment of assistants by the employee who are under his control, the furnishing by him of the necessary materials, and his right to control the work while it is in progress except as to results.

*Sliter v. Cobb*, 388 Mich. 202, 206, 200 N.W.2d 67, 68 (1972) (quoting *Zoltowski v. Ternes Coal & Lumber Co.*, 214 Mich. 231, 233, 183 N.W. 11 (1921)). Some additional factors that have been identified as indicia that a newspaper carrier is an independent contractor rather than an employee of the publisher are the following:

> if the carrier purchased his route from another carrier rather than the publisher; if the carrier is referred to as an "independent contractor" in the contract with the publisher; if the carrier is not included in any of the benefit plans; and if the carrier trains his successor. Other important factors for this determination include: whether the carrier hired his own substitutes; whether the company rules or suggestions had to be followed; and whether the carrier could deliver other items as well as the publisher's newspaper.

*Janice v. Hondzinski*, 176 Mich. App. 49, 53-54, 439 N.W.2d 276, 278 (1989) (citing 55 ALR3d, § 2, pp 1219-20).

As a general rule, "one who employs an independent contractor is not vicariously liable for the latter's negligence." *Hartford Fire Ins. Co. v. Walter Kidde & Co., Inc.*, 120 Mich. App. 283, 294, 328 N.W.2d 29, 34 (1982) (citing *Misiulis v. Milbrand Maint. Corp.*, 52 Mich. App. 494, 498, 218 N.W.2d 68 (1974)). "The rationale for this rule is that an

independent contractor is not subject to the control of the employer, and, therefore, the employer should not be held vicariously liable for the negligence of the independent contractor." *Id.*

Quiktrak has presented the following evidence in support of its contention that Cleveland was an independent contractor: The agreement between Quiktrak and Cleveland was entitled "Independent Contractor Agreement." Quiktrak did not deduct social security tax or income tax from Cleveland's pay. (Cleveland Dep. at 12). Quiktrak did not provide Cleveland any health benefits or other benefit plan. *Id.* at 18. Cleveland supplied his own tools. *Id.* at 8. Cleveland paid for his car, his car insurance and most of his gas mileage and the depreciation on his car. *Id.* at 6. Cleveland deducted business expenses on his personal income taxes. *Id.* at 8. The total training Cleveland received from Quiktrak was approximately 6 to 8 hours. *Id.* at 19. Cleveland decided, within a time window of ten days to one month, when to do a particular audit. *Id.* at 13. Cleveland could determine the time of day for doing the audit and he could take as much time as he wanted during the day to do the audit. *Id.* at 17. Quiktrak paid Cleveland by the completed job rather than by the hour. *Id.* at 9. Quiktrak was not Cleveland's full-time employment – Cleveland was working full time as a firefighter at the same time he was working for Quiktrak, and in 2003 was also involved in property preservation work. *Id.* at 10, 13. Cleveland considered himself an independent contractor. *Id.* at 19.

In response, Delbert Hoffman has presented evidence that John Deere required Quiktrak to conduct inspection services in accordance with John Deere's guidelines, and Quiktrak required Cleveland to perform inspection services in accordance with Quiktrak's guidelines. John Deere required Quiktrak representatives to "conduct Floor Plan Inspection Services in accordance with Deere's specific instructions mutually approved and/or amended by Deere and Quiktrak's home office," and Deere retained the right to request that Quiktrak assign a person "acceptable to Deere" to perform the Inspection Services." (Floor Plan Insp. Agrmt).

Cleveland received general guidelines from Quiktrak as well as specific guidelines tailored for particular clients like John Deere. (Cleveland Dep. at 39). In the Independent Contractor Agreement Cleveland agreed to perform certain services, including physical inspection of property and verification of serial numbers, and to perform those services subject to certain limitations. For example, Cleveland agreed to obtain permission from the dealer before conducting an audit, to evidence courtesy and professionalism, to avoid conflicts of interest, to work in a timely and diligent and manner, to be accurate and precise, and to notify Quiktrak in the event of any resistance from the dealer. (Indep. Contr. Agrmt). The specific instructions Cleveland received regarding inventories for John Deere required him to adhere to a dress code, to place a courtesy call to the dealer in advance of the audit, to identify himself to the dealer, to personally view all units and serial numbers, and

9

instructed him on how to report the results of the audit. (Cleveland Dep. at 54-56; Deere Credit Inventory Verification).

The evidence submitted by Delbert Hoffman is not sufficient to create an issue of fact as to Cleveland's status as an independent contractor. General guidance on professionalism and etiquette do not evidence the kind of day-to-day control required to overcome an independent contractor relationship. Specific rules on what information to gather and how to report it reflect control over the result to be obtained rather than control over the method of work. As noted in *Powell v. Appeal Bd. of Mich. Employment Sec. Comm'n*, 345 Mich. 455, 75 N.W.2d 874 (1956),[1] "[t]he right of the plaintiffs to set the time within which the work must be done, and to decide whether or not the finished product was satisfactory to the plaintiffs, is not sufficient to establish that she was an employee, and not an independent contractor." *Id.* at 460.

The Court is satisfied that the undisputed evidence in this case reveals, as a matter of law, that Cleveland was an independent contractor. There is accordingly no basis for holding Quiktrak vicariously liable for Cleveland's negligence.

---

[1] In *Kidder v. Miller-Davis Co.*, 455 Mich. 25, 34, 564 N.W.2d 872 (1997), the Michigan Supreme Court noted that *Powell* had been effectively overruled by *Tata v. Muskovitz*, 354 Mich. 695, 94 N.W.2d 71 (1959), because the control test had been abandoned in favor of the economic-reality test to determine who is an employer for purposes of the Workers' Disability Compensation Act. Because the control test is still viable for tort cases, the overruling of *Powell* based on the abandonment of the control test in Workers Compensation cases does not affect the viability of *Powell's* application of the control test to this case.

Although Delbert Hoffman has asserted that Deere retained the right to control both the method and result of Quiktrak's work in connection with the floor plan inspections it conducted, this assertion has no evidentiary support. Cleveland had no contractual relationship with Deere Credit. Deere Credit had no ability to control Cleveland's actions. Accordingly, there is no basis for holding Deere Credit vicariously liable for Cleveland's actions.

**B. Duty**

Even if the Court were to assume that Cleveland was not an independent contractor, Quiktrak and Deere Credit could only be vicariously liable for his tortious conduct if Quiktrak and/or Deere Credit owed the Hoffmans a duty to properly perform the inventory inspection services in a reasonable manner.

It is well-settled law that the threshold duty of care in a negligence action is a question of law to be resolved by the court. *Antcliff v. State Employees Credit Union*, 414 Mich. 624, 640-41, 327 N.W.2d 814, 821 (1982).

Quiktrak did not have a contract with Tailored Lawn or with either of the Hoffmans to perform the inventory audits. Quiktrak's contract was with Deere Credit. Quiktrak was paid by Deere Credit. The purpose of the inventory audits was to secure Deere Credit's interests, not to excuse or obviate Tailored Lawn's own duty to its owners to keep track of its inventory and payments. Neither is there any evidence to support a theory that Quiktrak or Deere Credit somehow induced the Hoffmans' reliance on the inventories. There is no

11

evidence that Quiktrak ever provided the inventory audit results to Tailored Lawn, or to either Delbert Hoffman or David Hoffman. Finally, there is no evidence to support a theory that Quiktrak or Deere Credit improperly withheld evidence that they knew was important to the Hoffmans as there is no evidence that Quiktrak or Deere Credit knew that Tailored Equipment was selling equipment out-of-trust. There is simply no evidence of record to support the finding of a legal duty owed by Quiktrak or Deere Credit to either of the Hoffmans under any legal theory.

### III.

For all these reasons the Court finds that Quiktrak and Deere Credit are entitled to summary judgment on Delbert Hoffman and David Hoffman's counterclaims and on Delbert Hoffman's third-party complaint.

An order and partial judgment consistent with this opinion will be entered.


Date:    October 25, 2006             /s/ Robert Holmes Bell
                                      ROBERT HOLMES BELL
                                      CHIEF UNITED STATES DISTRICT JUDGE